F I L E D
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### BEAUMONT DIVISION

MAY 0 2 2018

BY
DEPUTY_____

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| v. | § |
| | § |
| PATRICK WAYNE BRONNON (1) | § |
| GLENN DELL ETIENNE (2) | § |
| GERALDINE WELDON JOSEPH (3) | § |
| MORRIS BROUSSARD | § |
|  aka "Bruiser" (4) | § |
| KEISHA WINDON LEWIS (5) | § |
| HELENE WILLIAMS CALCOTE (6) | § |
| CYNTHIA LYNN BANION (7) | § |
| EARNEST HAMILTON (8) | § |
| NATHANIEL JOSEPH CHEVALIER (9) | § |
| KENDRA CHEVALIER (10) | § |
| RODRIC LEDAE WALLACE (11) | § |
| RILEY MOSS REED (12) | § |

CRIMINAL NO. 1:18-CR- 143

Crone–Giblin

**4:18mj0927**

United States Courts
Southern District of Texas
FILED
*June 11, 2018*
David J. Bradley, Clerk of Court

## INDICTMENT

THE UNITED STATES GRAND JURY CHARGES:

### Count One

> Violation: 18 U.S.C. § 1349
> (Conspiracy to Commit Mail Fraud)

#### The Conspiracy

Beginning on or about December, 2011, and continuing until on or about May 25, 2017, **Patrick Wayne Bronnon (Bronnon), Glenn Dell Etienne (Etienne), Geraldine Weldon Joseph (Joseph), Morris Broussard, aka "Bruiser" (Broussard), Keisha**

1

**Windon Lewis (Lewis), Helene Williams Calcote (Calcote), Cynthia Lynn Banion (Banion), Earnest Hamilton (Hamilton), Nathaniel Joseph Chevalier (N. Chevalier), Kendra Chevalier (K. Chevalier), Rodric Ledae Wallace (Wallace),** and **Riley Moss Reed (Reed)**, defendants, did knowingly and intentionally combine, conspire, confederate, and agree with each other, and with other persons, both known and unknown to the Grand Jury, to commit Mail Fraud, that is, to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, place in an authorized depository for mail matter any matter or thing to be sent or delivered by the Postal Service, take or receive from an authorized depository for mail matter any matter or thing, and knowingly cause to be delivered by mail or by any private or commercial interstate carrier any matter or thing, according to the direction thereon or at the place at which it is directed to be delivered by the person to whom it is addressed, in violation of 18 U.S.C. § 1341.

### Object of the Conspiracy

It was the object of the conspiracy to obtain money and funds from various insurance providers through fraudulent insurance claims, including claims for fire casualty, water damage, and theft, in the Port Arthur, Texas and greater Southeast Texas area.

### Manner and Means of the Conspiracy

2

Defendants **Bronnon** and **Etienne** approached several individuals about purchasing a home and insurance in their names. **Bronnon** or **Etienne** would select the home, and sometimes provide the policy owners with funds for the down payment and the initial insurance payment. Within a few weeks of the insurance becoming effective, **Bronnon**, **Etienne** or one of the policy owners would intentionally cause damage to the home, typically through fire or water damage. The policy owner would then initiate the claims process, knowing that the damage was intentional, causing a fraudulent claim to be filed. The insurance policies included the cost to replace the structure, the contents of the home, and emergency living expenses.

1. The homes were generally low value properties, with purchase prices as low as $25,000. However, the insurance policies purchased by the defendants covered the cost to replace the home with a new, up-to-code structure, and as such, the cost of replacement was significantly higher than the purchase price of the home.

2. In addition to the cost of replacement of the structure, the insurance policies covered the contents of the home. In order to make a claim for the contents of the home, the insured homeowner must make a detailed list of all personal items damaged in the fire or other event underlying the insurance claim, such as furniture, clothes, kitchen supplies, electronics and personal effects. The list must also include an estimated value of the damaged items.

3.  The insurance policies purchased by the defendants also covered "Additional Living Expenses" (ALE).  Additional Living Expense coverage provides compensation to the insured when they are unable to live in their own home due to an insured loss or claim and while the home is being repaired.  ALE provides the insured money to allow them to maintain their usual lifestyle, and compensate for the additional costs of living elsewhere when the home is destroyed or uninhabitable until it is repaired, or until the ALE policy limits are reached.

4.  In addition to claims for loss of the property itself, **Bronnon** and other co-defendants filed fraudulent claims for burglaries that never occurred.

5.  The following acts were committed by the following defendants in furtherance of the conspiracy:

a.      On or about December 1, 2011, **Bronnon** intentionally caused water damage to the home of Joseph at 4300 4th Street, Port Arthur, Texas.

b.      On or about December 2, 2011 **Joseph** told Allstate Insurance Company (Allstate) that her home at 4300 4th Street, Port Arthur, Texas flooded due to a burst pipe, when she knew that **Bronnon** intentionally caused the water damage for the purpose of filing a fraudulent insurance claim.

c.      On or about January 11, 2013, **Bronnon** and **Broussard** went to **Joseph's** home at 4300 4th Street, Port Arthur, Texas and intentionally started a fire in the home.

4

d.    On or about January 12, 2013, **Joseph** told Allstate that she was at 4300 4th Street, Port Arthur, Texas frying pork chops, started having chest pains, and left the home to go to the hospital, forgetting about the pork chops, which ultimately caused the fire, and which **Joseph** knew to be untrue.

e.    On or about May 20, 2013, Joseph reported to Allstate that while 4300 4th Street, Port Arthur, Texas was being repaired from the previous fire, thieves stole a number of items from the home, totaling approximately $29,437.71.  However, as **Joseph** was aware at the time she filed the claim, no theft took place and no property was stolen.

f.    On or about October 28, 2014, **Bronnon** intentionally caused a fire in **Joseph's** home at 4300 4th Street, Port Arthur, Texas.

g.    On or about October 28, 2014, **Joseph** contacted Allstate to file a claim for 4300 4th Street, Port Arthur, Texas, and claimed that she was unaware of how the fire began, which she knew at the time to be untrue.

h.    On April 15, 2013, **Broussard** secured insurance through American Hallmark Insurance Company of Texas (Hallmark) for 13118 Worthington Street, Sugarland, Texas for the purpose of committing fraud.

i.    On or about April 22, 2013, **Broussard** called Hallmark and claimed that 13118 Worthington Street, Sugarland, Texas burned down as a result of the co-defendant **Banion** leaving a foil wrapped chicken in the microwave, and then leaving the home, which he knew to be untrue.

j. On or about October 3, 2014, **Calcote** and **Bronnon** signed a document titled "Sworn Statement in Proof of Loss." In the "Sworn Statement in Proof of Loss," **Bronnon** and **Calcote** stated that at least $80,000 worth of property was stolen from 13118 Worthington Street, Sugarland, Texas, which they both knew to be untrue.

k. On or about March 3, 2015 **Banion** claimed to sign a contract for sale of 13118 Worthington Street, Sugarland, Texas with **Bronnon**, who then transferred title to the home to her.

l. On March 4, 2015, **Banion** purchased homeowners insurance for 13118 Worthington Street, Sugarland, Texas from GeoVera Specialty Insurance Company (GeoVera).

m. On or about March 11, 2015, **Banion** called GeoVera and told them that she went to the house that day to find that a pipe burst in the celling and as a result, the house was flooded and that the flooding was accidental.

n. Sometime just prior to on or about March 11, 2016, **Etienne** approached **N. Chevalier** about purchasing the home at 1049 Nederland Ave., Port Arthur, Texas.

o. On or about March 11, 2016, **N. Chevalier** purchased 1049 Nederland Ave., Port Arthur, Texas for the purpose of filing a fraudulent insurance claim.

p. Sometime just prior to March 11, 2016, **Etienne** provided **N. Chevalier** $5,000 to use as a down payment for 1049 Nederland Ave., Port Arthur, Texas to further the scheme to defraud Farmers Insurance Group (Farmers).

q.     On or about March 24, 2016, **Bronnon** intentionally set a fire at 1049 Nederland Ave., Port Arthur, Texas, causing significant damage.

r.     Sometime between March 24, 2016 and May 20, 2016, **Etienne** provided **N. Chevalier** and **K. Chevalier** a list of contents for 1049 Nederland Ave., Port Arthur, Texas to submit to Farmers as part of their insurance claim, knowing those items were not in their home.

s.     On or about May 20, 2016, **N. Chevalier** and **K. Chevalier** submitted a list of contents for 1049 Nederland Ave., Port Arthur, Texas to Farmers that they claimed were lost in the fire, when they knew that list to be fraudulent.

t.     On or about May 20, 2016, **N. Chevalier** and **K. Chevalier** signed a Proof of Loss for 1049 Nederland Ave., Port Arthur, Texas, in which they attested that the fire "did not originate or continue by any act, design, procurement, or willful neglect on the part of the insured," which they knew to be false.

u.     On or about March 24, 2012, **Hamilton** purchased the home at 824 Richmond, Port Arthur, Texas for the purpose of filing a fraudulent insurance claim.

v.     On or about March 31, 2012, **Bronnon** intentionally burned 824 Richmond, Port Arthur, Texas down in order to collect insurance proceeds.

w.     On or about April 1, 2012, **Hamilton** instructed **Reed** to sign a letter stating that the fire at 824 Richmond, Port Arthur, Texas was caused by **Reed's** generator, when **Hamilton** knew that the fire was intentionally started.

x.      On or about October 3, 2015, **Etienne** purchased the home at 1010 9th Street, Port Arthur, Texas for the purpose of filing a fraudulent insurance claim.

y.      On or about October 6, 2015, **Etienne** purchased home owners insurance for 1010 9th Street, Port Arthur, Texas from Progressive Insurance (Progressive).

z.      On or about October 17, 2015, **Bronnon** intentionally started the fire at 1010 9th Street, Port Arthur, Texas in order to collect insurance proceeds.

aa.      On or about October 17, 2015, **Lewis** told Port Arthur Fire Department (PAFD) that she was cooking chicken on a hotplate, which may have caused the fire at 1010 9th Street, Port Arthur, Texas, when, in fact, she knew that the fire was actually intentionally started by **Bronnon**.

bb.      On or about February 12, 2014, **Calcote** purchased the home at 4675 Beaumont Drive, Beaumont, Texas for the purpose of burning it down in order to collect insurance proceeds.

cc.      On or about February 12, 2014, **Calcote** purchased home owners insurance for 4675 Beaumont Drive, Beaumont, Texas from Farmers.

dd.      On or about March 16, 2014, **Calcote** contacted Farmers to report a fire at 4675 Beaumont Drive, Beaumont, Texas.

ee.      Sometime between March 16, 2014 and April 28, 2014, **Calcote** submitted a fraudulent list of items for 4675 Beaumont Drive, Beaumont, Texas she claimed were lost or damaged in the fire.

ff.     On or about May 16, 2016, **Bronnon** purchased the home at 4601 Sunken Court, Port Arthur, Texas, for the purpose of filing a fraudulent insurance claim.

gg.     On or about May 16, 2016, **Bronnon** purchased home owners insurance for 4601 Sunken Court, Port Arthur, Texas from Farmers.

hh.     On or about May 19, 2016, **Bronnon** called Farmers and reported that a faucet at 4601 Sunken Court, Port Arthur, Texas was inadvertently left in the open position when the city began water service, causing the home to flood, when, in fact, he was aware that the home was intentionally flooded.

ii.     On or about June 23, 2016, **Bronnon** signed a Proof of Loss form for 4601 Sunken Court, Port Arthur, Texas, in which he stated that the damage did not "originate or continue by any act, design, procurement, or willful neglect on the part of the insured," when he knew to be untrue.

jj.     **Lewis** purchased the home at 2722 Hampton Court, Port Neches, Texas and purchased home owners insurance through Allstate, for the purpose of filing a fraudulent insurance claim.

kk.     On or about June 3, 2016, **Bronnon** provided **Lewis** $3,000 to make the down payment for 2722 Hampton Court, Port Neches, Texas.

ll.     On or about June 13, 2016, Lewis contacted Allstate and filed a claim for 2722 Hampton Court, Port Neches, Texas, knowing that the fire was intentionally started.

9

mm.    On or about June 13, 2016, **Bronnon** intentionally started a fire at 2722 Hampton Court, Port Neches, Texas.

nn.    On or about October 5, 2016, **Wallace** purchased the home at 4690 Dallas Street, Beaumont, Texas.

oo.    On or about October 4, 2016, **Wallace** purchased home owners insurance for 4690 Dallas Street, Beaumont, Texas through Wellington Insurance Group for the purpose of filing a fraudulent insurance claim.

pp.    On or about December 16, 2016, **Wallace** signed a "Proof of Loss" regarding the fire at 4690 Dallas Street, Beaumont, Texas, knowing it to be untrue when he signed it.

qq.    On or about November 21, 2016, **Wallace** made false statements in an Examination Under Oath regarding the insurance claim for 4690 Dallas Street, Beaumont, Texas.

rr.    On or about October 14, 2016, **Bronnon** and **Etienne** intentionally caused a fire at 4690 Dallas Street, Beaumont, Texas for the purpose of filing a fraudulent insurance claim.

ss.    On March 2, 2016, **Lewis** told Pronto Insurance (Pronto) that she was driving a 2008 H2 Hummer, which was struck by a vehicle driven by **Reed**, causing the H2 Hummer to veer off the road and into a sign, when, in fact the H2 Hummer was intentionally driven into the sign.

tt.     On March 2, 2016 **Lewis** told Pronto that she was driving the H2 Hummer when it collided with **Reed's** vehicle, when, in fact **Bronnon** was the driver.

uu.     On or about March 2, 2016, **Reed** and **Bronnon** intentionally collided their vehicles in order to give the appearance to an insurance adjuster that the vehicles were in a collision with one another.

All in violation of 18 U.S.C. § 1349.

## Counts Two through Eleven

> Violation: 18 U.S.C. § 1341 (Mail Fraud)

Counts Two through Eleven incorporates by reference the Scheme, Object, and Manner and Means described in Count One of the Indictment.

### The Scheme

#### 4300 4th Street, Port Arthur, Texas

*Flood Claim*

1.     Defendant **Joseph** and her late husband purchased the home at 4300 4th Street, Port Arthur, Texas.  **Joseph** and **Bronnon** are cousins.

2.     In 2011, **Bronnon**, who owned a construction and remodeling business, approached **Joseph** regarding a way in which she could remodel her home without having to pay for it herself.  **Bronnon** instructed her to spend the night a friend's house when he told her to do so, and to "act surprised" when she came home to find her home damaged by water.  On or about the evening of December 1, 2011, **Bronnon** called

11

**Joseph** and instructed her to go to her friend's house for the night, which she did. When she returned to the home on December 2, 2011, she found that her home had sustained significant water damage, and she filed an insurance claim with Allstate Insurance Company (Allstate) the same day, as instructed by **Bronnon**. **Joseph** told Allstate that a pipe burst above one of the bedrooms, causing the home to flood.

3.　　Allstate mailed **Joseph** ten checks for this fraudulent claim between December 7, 2011 and April 23, 2012, for a total of $175,633. **Joseph** deposited these checks in her personal bank account and shared the proceeds with **Bronnon**. **Bronnon** was the contractor of record for repairs to the home that were needed as a result of the water damage.

*Fire Claim #1*

4.　　**Joseph** was dissatisfied with the work **Bronnon** did on her home after the intentional flooding in 2011, so she and **Bronnon** decided to intentionally burn her home for the insurance proceeds. **Bronnon** instructed **Joseph** to tell Allstate that she was cooking pork chops on the stove, which started a grease fire. On or about January 11, 2013, **Bronnon** and co-defendant **Broussard** came over to **Joseph's** residence and told Joseph to wait in her room. While she was in her room, **Bronnon** and **Broussard** intentionally started a fire in the home. **Joseph** heard **Bronnon** and **Broussard** leave the residence, and she waited for the fire to become large enough to do significant damage, and then left. **Joseph's** neighbor woke up around 1:30 a.m. to the smell of smoke and her

12

smoke detectors alarming. The neighbor looked outside and saw **Joseph's** home on fire and called the fire department. The Port Arthur Fire Department arrived shortly thereafter and extinguished the fire. **Joseph** told the fire department that the fire began when she was cooking, as instructed by **Bronnon**, which she knew to be false.

5.     The next day, January 12, 2013, **Joseph** and **Bronnon** called Allstate to report the fire. **Joseph** told Allstate that she was frying pork chops and started getting chest pains, at which point she left the house and went to the emergency room. She further reported to Allstate that while she was at the hospital, her neighbor called her to tell her that her house was on fire. Shortly after initiating the claim, **Joseph** referred Allstate to **Bronnon** for all further communication.

6.     Allstate mailed **Joseph** twenty-one checks for this claim between January 14, 2013 and June 20, 2013, totaling $248,123. **Joseph** deposited these checks in her personal bank account and shared the proceeds with **Bronnon**. **Bronnon** was the contractor of record for the repairs to the home for damage resulting from the fire.

*Theft Claims*

7.     **Joseph's** insurance policy covered personal property lost as a result of theft or burglary. **Joseph**, at **Bronnon's** direction, made two claims, on May 13, 2013 and May 20, 2013, to Allstate that her house was burglarized during the restoration process, and furniture, construction materials, tools, an air conditioner unit, appliances, cabinets and personal items were stolen. However, as **Joseph** was aware, no theft took place and no

13

property was stolen.  As a result of the false claims, on June 12, 2013, **Joseph** was mailed two reimbursement checks for $16,974.23 and $3,613.48, and another check on July 19, 2013 for $8,850.00.

*Fire Claim #2*

8.     **Joseph** was again dissatisfied with the work done on her home after the previous insurance claim, as she was having roofing problems and other repairs that needed to be made.  Sometime around October, 2014, **Joseph** saw **Bronnon** at a funeral and expressed to him her issues with the home, at which time **Joseph** and **Bronnon** devised a scheme to intentionally start another fire and collect insurance proceeds.

9.     On or about October 28, 2014, **Bronnon** came to **Joseph's** home around midnight. As with the first fire, **Joseph** stayed in the bedroom while **Bronnon** started the fire. Joseph waited until the fire was sufficiently burning, and then left the home, went to a neighbor's house and called the Port Arthur Fire Department.  Prior to the fire, **Joseph** and **Bronnon** removed certain items from the home, such as pictures and clothes, so they would not be damaged.

10.     On October 28, 2014, Allstate contacted **Joseph** regarding the fire.  **Joseph** told Allstate that she was asleep in her bed and woke up to the smell of smoke and heard glass breaking.  **Joseph** stated that she left the house immediately and called 9-1-1, but did not know what caused the fire.

14

11.    **Joseph** was mailed five checks between October 29, 2014 and September 10, 2015 as a result of this fraudulent claim.  In total on this claim, she was paid approximately $182,847.55.

On or about the following dates, in the Eastern District of Texas and elsewhere, **Geraldine Weldon Joseph** and **Patrick Wayne Bronnon**, defendants, with the intent to defraud, devised the above-described scheme and artifice to defraud and obtain money by materially false and fraudulent pretenses, representations, and promises for the purpose of executing or attempting to execute the above-described scheme and artifice to defraud and deprive, the defendants knowingly caused to be placed in an authorized depository for mail, to be sent and delivered by United States Postal Service or a private or commercial interstate mail carrier, according to the direction thereon or at the place at which it is directed to be delivered by the person to whom it is addressed, the following matters:

| Count | Defendant(s) | Date of Mailing (on or about) | Item Mailed | Insurance Company | Insured Property |
|---|---|---|---|---|---|
| 2 | Geraldine Weldon Joseph Patrick Wayne Bronnon Morris Broussard | May 17, 2013 | Check for $4,500 | Allstate | 4300 4th Street, Port Arthur, Texas |
| 3 | Geraldine Weldon Joseph Patrick Wayne Bronnon Morris Broussard | May 21, 2013 | Check for $2,100 | Allstate | 4300 4th Street, Port Arthur, Texas |
| 4 | Geraldine Weldon Joseph Patrick Wayne Bronnon Morris Broussard | June 20, 2013 | Check for $150 | Allstate | 4300 4th Street, Port Arthur, Texas |

| 5 | Geraldine Weldon Joseph Patrick Wayne Bronnon Morris Broussard | June 12, 2013 | Check for $16,974.23 | Allstate | 4300 4th Street, Port Arthur, Texas |
|---|---|---|---|---|---|
| 6 | Geraldine Weldon Joseph Patrick Wayne Bronnon Morris Broussard | June 12, 2013 | Check for $3,613.48 | Allstate | 4300 4th Street, Port Arthur, Texas |
| 7 | Geraldine Weldon Joseph Patrick Wayne Bronnon | October 29, 2014 | Check for $1,500 | Allstate | 4300 4th Street, Port Arthur, Texas |
| 8 | Geraldine Weldon Joseph Patrick Wayne Bronnon | November 13, 2014 | Check for $2,500 | Allstate | 4300 4th Street, Port Arthur, Texas |
| 9 | Geraldine Weldon Joseph Patrick Wayne Bronnon | December 16, 2014 | Check for $850 | Allstate | 4300 4th Street, Port Arthur, Texas |
| 10 | Geraldine Weldon Joseph Patrick Wayne Bronnon | June 24, 2015 | Check for $138,502.87 | Allstate | 4300 4th Street, Port Arthur, Texas |
| 11 | Geraldine Weldon Joseph Patrick Wayne Bronnon | September 10, 2015 | Check for $39,494.68 | Allstate | 4300 4th Street, Port Arthur, Texas |

All in violation of 18 U.S.C. § 1341.

## Counts Twelve through Fourteen

Violation: 18 U.S.C. § 1341 (Mail Fraud)

Counts Twelve through Fourteen incorporates by reference the Scheme, Object, and Manner and Means described in Count One of the Indictment.

### The Scheme

### 13118 Worthington Street, Sugarland, Texas

*Fire Claim #1*

16

1.  The home at 13188 Worthington Street, Sugarland, Texas, was purchased by Response Reliable Resource Emergency Response Team, Inc., owned by co-defendant **Broussard** and **Bronnon**. On April 15, 2013, **Broussard** secured insurance through American Hallmark Insurance Company of Texas (Hallmark). The policy went into effect on April 17, 2013.

2.  On or about April 22, 2013, **Broussard** called Hallmark to report that the home caught on fire and sustained significant damage. **Broussard** reported to Hallmark that he purchased the home with the intent of remodeling it, but was not living there at the time of the fire. **Broussard** claimed that he hired co-defendant **Banion** to clean the home and that she was preparing chicken to eat for lunch by wrapping it in tinfoil and placing it in the microwave to cook, and then left to go to the store. **Broussard** said that when she returned to the home it was on fire, and she called the fire department, who responded and put out the fire. **Broussard** then hired Reliable Solutions, which was owned by **Broussard** and **Bronnon**, to repair the home after the fire.

3.  Hallmark mailed **Broussard** five checks between June 12, 2013 and July 1, 2014, totaling approximately $52,260.

*Burglary Claim*

4.  After the fire, **Bronnon** purchased the home from **Broussard** and insured it through Allstate. His Allstate policy provided coverage for property lost as a result of theft.

5. On August 2, 2014, **Bronnon** called the Sugarland Police Department to report a burglary at the home. **Bronnon** reported that while he was not home, someone entered his home through the garage and stole numerous items from his home, including high-end clothes and electronics. **Bronnon** made a claim to Allstate for reimbursement, which included a list of items **Bronnon** claimed were stolen from the home. The list of allegedly stolen items was hand-written, signed and provided to Allstate by **Bronnon's** girlfriend, co-defendant **Calcote**. On or about October 3, 2014, **Calcote** and **Bronnon** signed a document titled "Sworn Statement in Proof of Loss." In the "Sworn Statement in Proof of Loss," **Bronnon** and **Calcote** stated that at least $80,000 worth of property was stolen from the home, which they both knew to be untrue. Many of the items listed by **Bronnon** were the same items listed on the **Chevalier's** inventory from their fire at 1049 Nederland Avenue, Port Arthur, Texas and by another later claim by **Calcote** at 4675 Beaumont Drive, Beaumont, Texas.

6. Allstate hired an investigator to determine the veracity of **Bronnon's** claim, and the investigator found very little evidence to support it. **Bronnon** refused to cooperate with Allstate's investigation and the claim was ultimately denied.

*Water Damage Claim*

7. On or about March 3, 2015, **Banion** – the same person who supposedly placed a foil-wrapped chicken in the microwave, causing the fire in April, 2013 – claimed to sign a contract for sale of the home with **Bronnon**, who then transferred title to the home to

18

her. **Banion** claimed she gave **Bronnon** $15,000 in cash as a down payment and then paid $1,259 a month in payments, all of which she claims were in cash, as well. On March 4, 2015, **Banion** purchased homeowners insurance from GeoVera Specialty Insurance Company (GeoVera). The policy covered loss from water damage, with a coverage limits of $193,000 for the structure, $96,500 for personal property, and $38,600 for ALE.

8. On or about March 11, 2015, **Banion** called GeoVera and told them that she went to the house that day to find that a pipe burst in the celling and as a result, the house was flooded. **Banion** filed a claim to repair the damage, as well as a claim for reimbursement for personal property. **Banion** told GeoVera that she hired E-Solutions, owned by co-defendant **Etienne**, to do emergency work, to stop the leak and attempt to dry the home out. Ultimately, GoVera hired ServPro to complete the mitigation work started by E-Solutions. **Banion** then hired Reliable Resources, owned by **Bronnon** and **Broussard**, to repair the home.

9. Between March 13, 2015 and September 22, 2015, GoVera mailed thirteen checks to **Banion**, or others on her behalf, for damage caused by the water and for ALE, totaling approximately $80,324.

On or about the following dates, in the Eastern District of Texas and elsewhere, **Morris Broussard**, aka **"Bruiser"**, **Patrick Wayne Bronnon**, and **Cynthia Lynn Banion**, defendants, with the intent to defraud, devised the above-described scheme and

19

artifice to defraud and obtain money by materially false and fraudulent pretenses, representations, and promises for the purpose of executing or attempting to execute the above-described scheme and artifice to defraud and deprive, the defendants knowingly caused to be placed in an authorized depository for mail, to be sent and delivered by United States Postal Service or a private or commercial interstate mail carrier, according to the direction thereon or at the place at which it is directed to be delivered by the person to whom it is addressed, the following matters:

| Count | Defendant(s) | Date of Mailing (on or about) | Item Mailed | Insurance Company | Insured Property |
|-------|--------------|-------------------------------|-------------|-------------------|------------------|
| 12 | Morris Broussard Patrick Wayne Bronnon Cynthia Lynn Banion | June 12, 2013 | Check for $2,397.28 | Hallmark | 13118 Worthington Street, Sugarland, Texas |
| 13 | Morris Broussard Patrick Wayne Bronnon Cynthia Lynn Banion | June 12, 2013 | Check for $18,130.91 | Hallmark | 13118 Worthington Street, Sugarland, Texas |
| 14 | Morris Broussard Patrick Wayne Bronnon Cynthia Lynn Banion | July 12, 2013 | Check for $11,386.35 | Hallmark | 13118 Worthington Street, Sugarland, Texas |

## Counts Fifteen through Seventeen

Violation: 18 U.S.C. § 1341 (Mail Fraud)

Counts Fifteen through Seventeen incorporates by reference the Scheme, Object, and Manner and Means described in Count One of the Indictment.

**The Scheme**

<u>4675 Beaumont Drive, Beaumont, Texas</u>

1. On or about February 12, 2014 **Bronnon's** girlfriend, co-defendant **Calcote**, purchased the home at 4675 Beaumont, Drive, Beaumont, Texas for $81,000. On or about February 12, 2014, **Calcote** insured the home through Texas Farmers Insurance Company (Farmers). The policy included $150,000 coverage for the structure, $113,000 for personal property, $60,000 for loss of use and $37,500 for Extended Replacement Cost.

2. On or about March 16, 2014 **Calcote** contacted Farmers and reported a fire at the residence. She said that she came home and the Beaumont Fire Department (BFD) was already on scene. **Calcote** told Farmers that she was unsure of how the fire started, but believed from speaking with BFD that it started in the breaker box, and as a result, the home was destroyed, along with all of the contents.

3. On or about April 12, 2014, **Calcote** signed a 6 month lease for temporary housing to live at 13118 Worthington Street, Sugarland, Texas, which was owned by **Bronnon's** company, Reliable Resource.

4. **Calcote** made a claim for reimbursement for personal property lost in the fire and submitted an itemized list of damaged or destroyed property. The list she submitted included a large number of the exact same items as were claimed by the **Chevalier's** in

the fire at 1049 Nederland Avenue, Port Arthur, Texas and by **Bronnon** and herself related to a theft claim at 13118 Worthington Street, Sugarland, Texas.

5. Farmers mailed **Calcote** three checks between March 31, 2014 and April 28, 2014, totaling $173,536.47 based on this fraudulent claim.

On or about the following dates, in the Eastern District of Texas and elsewhere, **Helene Williams Calcote** and **Patrick Wayne Bronnon**, defendants, with the intent to defraud, devised the above-described scheme and artifice to defraud and obtain money by materially false and fraudulent pretenses, representations, and promises for the purpose of executing or attempting to execute the above-described scheme and artifice to defraud and deprive, the defendants knowingly caused to be placed in an authorized depository for mail, to be sent and delivered by United States Postal Service or a private or commercial interstate mail carrier, according to the direction thereon or at the place at which it is directed to be delivered by the person to whom it is addressed, the following matters:

| Count | Defendant(s) | Date of Mailing (on or about) | Item Mailed | Insurance Company | Insured Property |
|-------|--------------|-------------------------------|-------------|-------------------|------------------|
| 15 | Helene Williams Calcote Patrick Wayne Bronnon | March 31, 2014 | Check for $1,250 | Farmers | 4675 Beaumont Drive, Beaumont, Texas |
| 16 | Helene Williams Calcote Patrick Wayne Bronnon | April 10, 2014 | Check for $150,000 | Farmers | 4675 Beaumont Drive, Beaumont, Texas |

| 17 | Helene Williams Calcote Patrick Wayne Bronnon | April 28, 2014 | Check for $22,285.67 | Farmers | 4675 Beaumont Drive, Beaumont, Texas |

All in violation of 18 U.S.C. § 1341.

### Counts Eighteen through Nineteen

Violation: 18 U.S.C. § 1341 (Mail Fraud)

Counts Eighteen throughout Nineteen incorporates by reference the Scheme, Object, and Manner and Means described in Count One of the Indictment.

### The Scheme

### 1010 9th Street, Port Arthur, Texas

1. **Etienne** purchased 1010 9th Street, Port Arthur, Texas on October 3, 2015 for approximately $70,000. **Etienne** purchased homeowners insurance through Homesite Insurance Company (Homesite) on October 6, 2015.

2. On October 17, 2015, a fire was reported at the residence at approximately 10:30 p.m. and the Port Arthur Fire Department (PAFD) responded. **Etienne** informed the fire department that he recently purchased the home and was in the process of remodeling it to make it suitable for living. **Etienne** told PAFD that he planned to live on first floor of the home and co-defendant **Lewis** was to rent the second floor. PAFD spoke to **Lewis**, who told them that she was cooking chicken on a hotplate in the bedroom and

left the home just prior to the fire starting, suggesting that the she may have inadvertently set the fire with the hotplate.

3.  However, as **Lewis** was aware, the fire was not caused by the hotplate, but started in the bedroom by **Bronnon**. **Lewis** was not in the room at the time the fire was started, but saw **Bronnon** and **Reed** hurriedly leaving the bedroom and she exited the residence with them.

4.  Homesite mailed **Etienne** a check on December 19, 2015 for $202,168.66 and another check on February 17, 2016 for $29,562.80, for a total of $231,731.48.

5.  On or about the following dates, in the Eastern District of Texas and elsewhere, **Glenn Dell Etienne, Patrick Wayne Bronnon**, and **Keisha Windon Lewis**, defendants, with the intent to defraud, devised the above-described scheme and artifice to defraud and obtain money by materially false and fraudulent pretenses, representations, and promises for the purpose of executing or attempting to execute the above-described scheme and artifice to defraud and deprive, the defendants knowingly caused to be placed in an authorized depository for mail, to be sent and delivered by United States Postal Service or a private or commercial interstate mail carrier, according to the direction thereon or at the place at which it is directed to be delivered by the person to whom it is addressed, the following matters:

| Count | Defendant(s) | Date of Mailing (on or about) | Item Mailed | Insurance Company | Insured Property |
| --- | --- | --- | --- | --- | --- |

| 18 | Glenn Dell Etienne Patrick Wayne Bronnon Keisha Windon Lewis | December 19, 2015 | Check for $202,168.66 | Homesite | 1010 9th Street, Port Arthur, Texas |
| 19 | Glenn Dell Etienne Patrick Wayne Bronnon Keisha Windon Lewis | February 17, 2016 | Check for $29,562.80 | Homesite | 1010 9th Street, Port Arthur, Texas |

All in violation of 18 U.S.C. § 1341.

## Counts Twenty throughout Twenty-Two

Violation: 18 U.S.C. § 1341 (Mail Fraud)

Counts Twenty throughout Twenty Two incorporates by reference the Scheme, Object, and Manner and Means described in Count One of the Indictment.

### The Scheme

### 1049 Nederland Ave., Port Arthur, Texas

1. **N. Chevalier** and **K. Chevalier** purchased 1049 Nederland Ave., Port Arthur, Texas on or about March 11, 2016. **N. Chevalier** became aware of the house when a member of his church, co-defendant **Etienne**, approached him about purchasing it. **Etienne** provided **N. Chevalier** with $5,000 for the down payment, and the remaining approximately $20,000 was financed by the seller.

2. On or about March 18, 2013, **N. Chevalier** purchased insurance for the home from Farmers Insurance (Farmers). The policy covered, among other things, damage to or loss of the home caused by fire, including contents and ALE.

3.   On or about March 24, 2013 – six days after the home was purchased – the home sustained significant damage as a result of a fire.  **N. Chevalier** reported the fire to Farmers the same day, but, as he was aware at the time, the fire was intentionally started by **Bronnon** for the purpose of collecting insurance proceeds.  On or about May 20, 2016, **N. Chevalier** and **K. Chevalier** submitted an itemized list of contents of their home that they claimed were lost in the fire.  The list, however, was provided to the **Chevaliers** by **Etienne** and, as they were both aware, were not contents of their home.  On or about May 20, 2013, **N. Chevalier** and **K. Chevalier** submitted a signed and notarized "Proof of Loss" to Farmers.  In it, they attested that the fire did "not originate or continue by any act, design, procurement or willful neglect on the part of the insured," which they both knew to be false at the time they signed the document.

4.   As a result of this fraudulent claim, Farmers mailed three checks to the **Chevaliers** or their designees, totaling $138,800 and conducted five electronic funds transfers totaling $60,960.83, for a combined total of $199,760.83.  The excess proceeds were divided among the **Chevaliers**, **Etienne** and **Bronnon**.

On or about the following dates, in the Eastern District of Texas and elsewhere, **Nathaniel Joseph Chevalier**, **Kendra Chevalier**, **Patrick Wayne Bronnon**, and **Glenn Dell Etienne**, defendants, with the intent to defraud, devised the above-described scheme and artifice to defraud and obtain money by materially false and fraudulent pretenses, representations, and promises for the purpose of executing or attempting to execute the

26

above-described scheme and artifice to defraud and deprive, the defendants knowingly

caused to be placed in an authorized depository for mail, to be sent and delivered by

United States Postal Service or a private or commercial interstate mail carrier, according

to the direction thereon or at the place at which it is directed to be delivered by the person

to whom it is addressed, the following matters:

| Count | Defendant(s) | Date of Mailing (on or about) | Item Mailed | Insurance Company | Insured Property |
|-------|--------------|-------------------------------|-------------|-------------------|------------------|
| 20 | Nathaniel Joseph Chevalier Kendra Chevalier Patrick Wayne Bronnon Glenn Dell Etienne | April 14, 2016 | Check for $800 | Farmers | 1049 Nederland Ave., Port Arthur, Texas |
| 21 | Nathaniel Joseph Chevalier Kendra Chevalier Patrick Wayne Bronnon Glenn Dell Etienne | May 2, 2016 | Check for $19,166.67 | Farmers | 1049 Nederland Ave., Port Arthur, Texas |
| 22 | Nathaniel Joseph Chevalier Kendra Chevalier Patrick Wayne Bronnon Glenn Dell Etienne | May 3, 2016 | Check for $118,833.33 | Farmers | 1049 Nederland Ave., Port Arthur, Texas |

All in violation of 18 U.S.C. § 1341.

### Counts Twenty-three through Twenty-seven

Violation: 18 U.S.C. § 1341 (Mail Fraud)

Counts Twenty-three through Twenty-seven incorporates by reference the

Scheme, Object, and Manner and Means described in Count One of the Indictment.

### The Scheme

<u>2722 Hampton Court, Port Neches, Texas</u>

1. On or about June 3, 2016, **Lewis** purchased the home at 2722 Hampton Court, Port Neches, Texas for $92,500, with a down payment of $3,000. Shortly after purchasing the home, **Lewis** purchased insurance for the home through Allstate. The money used for the down payment and the initial insurance payment was provided to **Lewis** by **Bronnon**.

2. On or about June 13, 2016, **Bronnon** intentionally started a fire at the residence and instructed **Lewis** to file contact Allstate and file a claim. **Lewis** was aware that **Bronnon** intentionally started the fire at the time she filed the claim.

3. Between July 1, 2016 and March 28, 2017, Allstate mailed eight checks to **Lewis** or others on her behalf, for a total of approximately $200,294.

4. On or about the following dates, in the Eastern District of Texas and elsewhere, **Patrick Wayne Bronnon** and **Keisha Windon Lewis**, defendants, with the intent to defraud, devised the above-described scheme and artifice to defraud and obtain money by materially false and fraudulent pretenses, representations, and promises for the purpose of executing or attempting to execute the above-described scheme and artifice to defraud and deprive, the defendants knowingly caused to be placed in an authorized depository for mail, to be sent and delivered by United States Postal Service or a private or commercial interstate mail carrier, according to the direction thereon or at the place at

which it is directed to be delivered by the person to whom it is addressed, the following

matters:

| Count | Defendant(s) | Date of Mailing (on or about) | Item Mailed | Insurance Company | Insured Property |
|-------|--------------|-------------------------------|-------------|-------------------|------------------|
| 23 | Patrick Wayne Bronnon Keisha Windon Lewis | July 1, 2016 | Check for $180,000 | Allstate | 2722 Hampton Court, Port Neches, Texas |
| 24 | Patrick Wayne Bronnon Keisha Windon Lewis | July 5, 2016 | Check for $5,807.50 | Allstate | 2722 Hampton Court, Port Neches, Texas |
| 25 | Patrick Wayne Bronnon Keisha Windon Lewis | July 22, 2016 | Check for $1,386 | Allstate | 2722 Hampton Court, Port Neches, Texas |
| 26 | Patrick Wayne Bronnon Keisha Windon Lewis | October 10, 2016 | Check for $3,713 | Allstate | 2722 Hampton Court, Port Neches, Texas |
| 27 | Patrick Wayne Bronnon Keisha Windon Lewis | March 28, 2017 | Check for $4,585 | Allstate | 2722 Hampton Court, Port Neches, Texas |

All in violation of 18 U.S.C. § 1341.

## Counts Twenty-Eight through Thirty

Violation: 18 U.S.C. § 1341 (Mail Fraud)

Counts Twenty-Eight through Thirty incorporates by reference the Scheme,

Object, and Manner and Means described in Count One of the Indictment.

### The Scheme

#### 4690 Dallas Street, Beaumont, Texas

29

1. On or about October 5, 2016, **Wallace** purchased the home at 4690 Dallas Street, Beaumont, Texas for $59,900, with a down payment of $5,000. On October 4, 2016, **Wallace** purchased insurance for the home through Wellington Insurance Group (Wellington). The policy covered up to $173,280 for the structure, $86,640 for the contents, and $17,328 for ALE. When **Wallace** completed the insurance application, he listed **Etienne** as an emergency contact person.

2. On or about October 14, 2016, **Wallace** was contacted by the Beaumont Fire Department (BFD), who informed him that his home was on fire. BFD extinguished the fire and **Wallace** contacted Wellington to report the loss. BFD determined that the fire originated in the electrical box.

3. Prior to the fire, **Wallace**, **Bronnon** and **Etienne** discussed a plan to insure the home and burn it for insurance proceeds, but **Wallace** was unaware of how or when the fire would occur. However, on or about December 16, 2016, **Wallace** signed a "Proof of Loss" in which he attested that the loss "did not originate by any act, design, procurement, or willful neglect on the part of the undersigned insured," which he knew to be untrue at the time he signed it. On or about November 21, 2016, **Wallace** participated in an "Examination Under Oath," where he answered questions about the fire from an attorney representing Wellington. **Etienne** accompanied **Wallace** to give this statement and was present in the room during the questioning.

30

4. At the time of the fire, **Wallace** was living with his girlfriend in Port Arthur, but was encouraged by **Etienne** to sign a fake apartment lease so that he could collect ALE payments. On or about February 16, 2017, **Wallace** provided Wellington with a copy of a signed lease for an apartment in Nederland, Texas.

5. Between November 14, 2016 and February 22, 2018, **Wallace** was mailed three checks based on his fraudulent claim, totaling $132,805.09.

6. On or about the following dates, in the Eastern District of Texas and elsewhere, **Rodric Ledae Wallace**, **Patrick Wayne Bronnon**, and **Glenn Dell Etienne**, defendants, with the intent to defraud, devised the above-described scheme and artifice to defraud and obtain money by materially false and fraudulent pretenses, representations, and promises for the purpose of executing or attempting to execute the above-described scheme and artifice to defraud and deprive, the defendants knowingly caused to be placed in an authorized depository for mail, to be sent and delivered by United States Postal Service or a private or commercial interstate mail carrier, according to the direction thereon or at the place at which it is directed to be delivered by the person to whom it is addressed, the following matters:

| Count | Defendant(s) | Date of Mailing (on or about) | Item Mailed | Insurance Company | Insured Property |
|-------|-------------|-------------------------------|-------------|-------------------|------------------|
| 28 | Rodric Ledae Wallace Patrick Wayne Bronnon Glenn Dell Etienne | December 22, 2016 | Check for $109,305.09 | Wellington | 4690 Dallas Street, Beaumont, Texas |

31

| 29 | Rodric Ledae Wallace Patrick Wayne Bronnon Glenn Dell Etienne | November 14, 2016 | Check for $1,000 | Wellington | 4690 Dallas Street, Beaumont, Texas |
| 30 | Rodric Ledae Wallace Patrick Wayne Bronnon Glenn Dell Etienne | February 22, 2018 | Check for $22,500 | Wellington | 4690 Dallas Street, Beaumont, Texas |

All in violation of 18 U.S.C. § 1341.

## Counts Thirty-One through Thirty-Six

> Violation: 18 U.S.C. § 1341 (Mail Fraud)

Counts Thirty-One – Thirty-Six incorporates by reference the Scheme, Object, and Manner and Means described in Count One of the Indictment.

### The Scheme

### 2008 H2 Hummer

1. On or about November 6, 2014, **Calcote** purchased a 2008 H2 Hummer, which was insured by Pronto General Agency, Ltd. (Pronto). On or about March 2, 2016, **Reed** and **Lewis** claimed the vehicle was in an accident.

2. **Reed** told Pronto that he was driving eastbound on Highway 73 near Port Arthur, driving his 1990 Lincoln Town Car, and attempted to switch lanes. He claimed that the H2 Hummer was in his blind spot and he collided with the H2 Hummer, which pushed the H2 Hummer off the road, causing it to collide with a sign. **Lewis** told Pronto that she was driving the H2 Hummer.

3.  However, as **Reed** and **Lewis** were both aware, **Bronnon** was actually driving the H2 Hummer and the two vehicles did not collide. Instead, **Bronnon** intentionally drove the H2 Hummer off the road and into a sign to damage the vehicle so that he could make a fraudulent insurance claim. Earlier in the day on March 2, 2016, **Reed** and **Bronnon** intentionally caused a minor collision between the H2 Hummer and Lincoln in order to have physical evidence (e.g. damage to the Lincoln and the exchange of body paint) to show Pronto that the two cars did collide, as they intended to tell Pronto.

4.  Between March 22, 2016 and May 19, 2016, Pronto mailed six checks as a result of this fraudulent claim, and paid a total of approximately $25,407.

5.  On or about the following dates, in the Eastern District of Texas and elsewhere, **Patrick Wayne Bronnon**, **Keisha Windon Lewis**, and **Riley Moss Reed**, defendants, with the intent to defraud, devised the above-described scheme and artifice to defraud and obtain money by materially false and fraudulent pretenses, representations, and promises for the purpose of executing or attempting to execute the above-described scheme and artifice to defraud and deprive, the defendants knowingly caused to be placed in an authorized depository for mail, to be sent and delivered by United States Postal Service or a private or commercial interstate mail carrier, according to the direction thereon or at the place at which it is directed to be delivered by the person to whom it is addressed, the following matters:

| Count | Defendant(s) | Date of Mailing | Item Mailed | Insurance Company | Insured Property |
|-------|--------------|-----------------|-------------|-------------------|------------------|

33

| | | (on or about) | | | |
|---|---|---|---|---|---|
| 31 | Patrick Wayne Bronnon Keisha Windon Lewis Riley Moss Reed | March 18, 2016 | Check for $1,375 | Pronto | H2 Hummer |
| 32 | Patrick Wayne Bronnon Keisha Windon Lewis Riley Moss Reed | March 19, 2016 | Check for $184.80 | Pronto | H2 Hummer |
| 33 | Patrick Wayne Bronnon Keisha Windon Lewis Riley Moss Reed | March 19, 2016 | Check for $275 | Pronto | H2 Hummer |
| 34 | Patrick Wayne Bronnon Keisha Windon Lewis Riley Moss Reed | March 19, 2016 | Check for $402.60 | Pronto | H2 Hummer |
| 35 | Patrick Wayne Bronnon Keisha Windon Lewis Riley Moss Reed | March 19, 2016 | Check for $310 | Pronto | H2 Hummer |
| 36 | Patrick Wayne Bronnon Keisha Windon Lewis Riley Moss Reed | March 22, 2016 | Check for $22,860 | Pronto | H2 Hummer |

All in violation of 18 U.S.C. § 1341.

## Count Thirty-Seven

Violation:  18 U.S.C. § 844(h)
(Use of Fire in Commission of a Felony)

On or about October 28, 2014, in the Eastern District of Texas, **Patrick Wayne Bronnon** and **Geraldine Weldon Joseph**, defendants, knowingly used fire to commit a violation of 18 U.S.C. § 1341 (Mail Fraud), a felony prosecutable in a court of the United States.

In violation of 18 U.S.C. §§ 844(h) and 2.

## Count Thirty-Eight

Violation:  18 U.S.C. § 844(h)

34

(Use of Fire in Commission of a Felony)

On or about March 16, 2014, in the Eastern District of Texas, **Patrick Wayne Bronnon** and **Helene Williams Calcote**, defendants, knowingly used fire to commit a violation of 18 U.S.C. § 1341 (Mail Fraud), a felony prosecutable in a court of the United States.

In violation of 18 U.S.C. §§ 844(h) and 2.

### Count Thirty-Nine

Violation: 18 U.S.C. § 844(h)
(Use of Fire in Commission of a Felony)

On or about June 13, 2016, in the Eastern District of Texas, **Patrick Wayne Bronnon** and **Keisha Windon Lewis** defendants, knowingly used fire to commit a violation of 18 U.S.C. § 1341 (Mail Fraud), a felony prosecutable in a court of the United States.

In violation of 18 U.S.C. §§ 844(h) and 2.

### Count Forty

Violation: 18 U.S.C. § 844(h)
(Use of Fire in Commission of a Felony)

On or about October 14, 2016, in the Eastern District of Texas, **Patrick Wayne Bronnon**, **Glenn Dell Etienne** and **Rodric Ledae Wallace**, defendants, knowingly used fire to commit a violation of 18 U.S.C. § 1341 (Mail Fraud), a felony prosecutable in a court of the United States.

In violation of 18 U.S.C. §§ 844(h) and 2.

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE

Pursuant to 8 U.S.C. § 982(a)(7), § 981(a)(1)(c) and (G) & 28 USC § 2461

Upon conviction of one or more of the offenses alleged in Counts One through Forty of this indictment, defendants Patrick Wayne Bronnon (Bronnon), Glenn Dell Etienne (Etienne), Geraldine Weldon Joseph (Joseph), Morris Broussard, aka "Bruiser" (Broussard), Keisha Windon Lewis (Lewis), Helene Williams Calcote (Calcote), Cynthia Lynn Banion (Banion), Earnest Hamilton (Hamilton), Nathaniel Joseph Chevalier (N. Chevalier), Kendra Chevalier (K. Chevalier), Rodric Ledae Wallace (Wallace), and Riley Moss Reed (Reed), shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), § 981(a)(1)(c) and (G) & 28 USC § 2461, any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violations, including but not limited to the following:

    a.  a 40.46 acre tract of land, located at:
        716 County Road 36
        Angleton, Texas
        Brazoria County

    b.  a white 2017 Nissan Maxima, VIN 1N4AA6AP8HC453766

    c.  a silver 2004 Mercedes-Benz SL500 Convertible, VIN
        WDBSK75F64F084576

    d.  a silver 2012 Mercedes-Benz E350; VIN WDDHF5KB2CA522047

## A. Money Judgment

A sum of money in United States currency representing the amount of proceeds obtained as a result of the offense described in Counts One through Forty of this information, in violation of 18 U.S.C. §§ 1341, 1349 and 844(h).  The loss foreseeable to each defendant is as follows:

      a.  Patrick Wayne Bronnon: $1,732,159.66

      b.  Glenn Dell Etienne: $564,297.40

      c.  Geraldine Weldon Joseph: $636,041.26

      d.  Morris Broussard: $132,584

      e.  Keisha Windon Lewis: $457,432.48

      f.  Helene Williams Calcote: $173,536

      g.  Cynthia Lynn Banion: $132,584

      h.  Earnest Hamilton: $105,824

      i.  Nathaniel Joseph Chevalier: $199,760.83

      j.  Kendra Chevalier: $199,760.83

      k.  Rodric Ledae Wallace: $132,805.09

      l.  Riley Moss Reed: $25,407

**B.  Substitute Assets**

If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party;

(c)  has been placed beyond the jurisdiction of the court;

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

By virtue of the commission of the offenses alleged in Counts One through Forty of this indictment, any and all interest the defendants have in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to 8 USC § 982(a)(7), § 981(a)(1)(c) and (G) & 28 USC § 2461.


A TRUE BILL

_____
GRAND JURY FOREPERSON


JOSEPH D. BROWN
UNITED STATES ATTORNEY

_____
CHRISTOPHER TORTORICE
ASSISTANT U.S. ATTORNEY


38

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 1:18-CR- 143 |
| | § | |
| PATRICK WAYNE BRONNON (1) | § | |
| GLENN DELL ETIENNE (2) | § | |
| GERALDINE WELDON JOSEPH (3) | § | |
| MORRIS BROUSSARD | § | |
| aka "Bruiser" (4) | § | |
| KEISHA WINDON LEWIS (5) | § | |
| HELENE WILLIAMS CALCOTE (6) | § | |
| CYNTHIA LYNN BANION (7) | § | |
| EARNEST HAMILTON (8) | § | |
| NATHANIEL JOSEPH CHEVALIER (9) | § | |
| KENDRA CHEVALIER (10) | § | |
| RODRIC LEDAE WALLACE (11) | § | |
| RILEY MOSS REED (12) | § | |

## **NOTICE OF PENALTY**

### **Count One**

<u>Violation:</u>    18 U.S.C. § 1349 (Conspiracy to Commit Mail Fraud)

<u>Penalty:</u>    Imprisonment of not more than twenty (20) years; a fine not to
exceed $250,000.00 or twice the pecuniary gain to the defendant or
loss to the victim, or both.  A term of supervised release of not more
than three (3) years.

<u>Special Assessment:</u> $100.00

### **Counts Two – Thirty-Six**

<u>Violation:</u>    18 U.S.C. § 1341 (Mail Fraud)

<u>Penalty:</u>    Imprisonment of not more than twenty (20) years; a fine not to
exceed $250,000.00 or twice the pecuniary gain to the defendant or
loss to the victim, or both.  A term of supervised release of not more
than three (3) years.

Special Assessment: $100.00

## Counts Thirty-Seven – Forty

Violation:        18 U.S.C. § 844(h)  (Use of Fire in Commission of a Felony)

Penalty:          Imprisonment for a term of 10 years; a fine not to exceed
                  $250,000.00 or twice the pecuniary gain to the defendant or loss to
                  the victim; or both; and supervised release of not more than three (3)
                  years.

                  If, however, it is shown that the defendant has a second or
                  subsequent conviction for violation of 18 U.S.C. § 844(h),
                  imprisonment for a term of twenty (20) years.

                  Any term of imprisonment imposed under 18 U.S.C. § 844(h) must
                  run consecutively to any other term of imprisonment.

Special Assessment: $100

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Texas

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Cynthia Lynn Banion | ) | Case No.  1:18cr143-7 |
| | ) | |
| ....................... | ) | |
| *Defendant* | ) | |

## ARREST WARRANT

To:    Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*    CYNTHIA LYNN BANION

who is accused of an offense or violation based on the following document filed with the court:

☑ SEALED Indictment    ☐ Superseding Indictment    ☐ Information    ☐ Superseding Information    ☐ Complaint
☐ Probation Violation Petition    ☐ Supervised Release Violation Petition    ☐ Violation Notice    ☐ Order of the Court

This offense is briefly described as follows:

18 USC 1349  Conspiracy to commit mail fraud
18 USC 1341  Mail fraud

Date:    5/3/18                                                 *David A. O'Toole*
                                                            *Issuing officer's signature*

City and state:    Beaumont, TX                              David A. O'Toole, Clerk of Court
                                                            *Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ |
| Date: _____                                    _____ <br> *Arresting officer's signature* <br><br> _____ <br> *Printed name and title* |